*Notice: This order is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| In the Disciplinary Matter Involving )<br><br>**VIKRAM CHAOBAL, Attorney**. | ) Supreme Court No. S-18128 <br> ) <br> ) ABA File Nos. 2017D182/2017D196/ <br> ) 2018D008/2018D217/2018D078/ <br> ) 2018D109/2018D116/2018D117/ <br> ) 2018D216/2018D231/2019D056 <br> ) <br> ) **Order** <br> ) <br> ) **Order No. 115 – November 12, 2021** |

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.
Winfree, Chief Justice, dissenting.

Bar Counsel for the Alaska Bar Association and attorney Vikram Chaobal entered into a stipulation for discipline by consent that would result in his suspension from the practice of law for 30 months, with two years and a day to be served and the remainder of the 30-month suspension stayed. The Bar Association's Disciplinary Board approved the stipulation and now recommends that we do so as well, suspending Chaobal according to the stipulation's terms. The facts of Chaobal's misconduct are set

out in the stipulation attached as an appendix.[1] We take the stipulated facts as true and apply our independent judgment to the sanction's appropriateness.[2]

Based on the stipulated facts we agree with the stipulation's conclusion about the appropriate sanction. Accordingly:

Vikram Chaobal is SUSPENDED from the practice of law in Alaska for a period of 30 months, with two years and a day to be served and the remainder of the 30-month suspension stayed. The suspension is effective 30 days from the date of this order as provided by Alaska Bar Rule 28(c). Reinstatement proceedings following the served portion of the 30-month suspension shall be conducted as set out in Alaska Bar Rule 29(c)(1)-(4). Chaobal shall also comply with the following conditions:

(a)　　Chaobal shall fulfill the requirements of Alaska Bar Rule 28 when commencing the period of suspension.

(b)　　Prior to seeking reinstatement Chaobal shall make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and all clients for any fee arbitration awards that remain unpaid or that are ordered to be paid.

(c)　　Prior to seeking reinstatement Chaobal shall certify to Bar Counsel that he has earned at least nine credit hours of continuing legal education in the areas of ethics, law office management, and management of law office accounts.

---

[1]　　The stipulation has been edited to delete identifying references to others, for clarification, and to conform to supreme court technical requirements.

[2]　　*In re Brown*, 392 P.3d 474, 474 (Alaska 2017); *cf. In re Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (stating that we independently review entire disciplinary proceeding record while affording great weight to Disciplinary Board's findings of fact).

(d)     Chaobal shall meet with the Lawyers' Assistance Committee (LAC) no more than 60 days before filing a petition for reinstatement and provide to Bar Counsel an LAC report approving his plan to seek reinstatement.

(e)     During the stayed portion of the 30-month suspension, Chaobal, at his expense, shall perform legal work only under the supervision of an attorney. The supervising attorney must be an attorney on active status with the Alaska Bar Association and be mutually acceptable to Bar Counsel and Chaobal. At least monthly the supervising attorney shall meet with Chaobal to discuss matters such as case management, compliance with court deadlines, and communications with clients. The supervising attorney shall report telephonically to Bar Counsel monthly.

(f)     During the period of supervision, if Chaobal commits a violation of Alaska Rules of Professional Conduct 1.3 or 1.4, and if the Disciplinary Board or the Supreme Court imposes discipline for the new misconduct, the period of stayed suspension in this case shall be imposed in addition to any discipline ordered for the new misconduct.

(g)     Pursuant to the schedule provided in Alaska Bar Rule 16(c)(3), Chaobal shall pay $1,000 in costs and attorney's fees to the Alaska Bar Association within 60 days of entry of this order.

Entered by direction of the court.

Clerk of the Appellate Courts

_____/s/_____
Meredith Montgomery

WINFREE, Chief Justice, dissenting.

I believe the recommended discipline is insufficient based on the stipulated facts and discipline analysis and therefore dissent from this order.

cc:     Supreme Court Justices
        Clerks of Court

Distribution:

Phillip E. Shanahan
Alaska Bar Association
840 K Street, Suite 100
Anchorage AK 99501

Vikram Chaobal
Respondent Attorney
1841 W. 80th Avenue, #7
Anchorage, AK  99502

**ORD 115**

In The Disciplinary Matter )
Involving )
            )
    VIKRAM CHAOBAL, )
            )
      Respondent. )
            )
_____ )

ABA Membership No. 0305011
ABA File Nos. 2017D182, 2017D196, 2018D008, 2018D217, 2018D078, 2018D109, 2018D116, 2018D117, 2018D216, 2018D231, 2019D056

## STIPULATION FOR DISCIPLINE BY CONSENT PURSUANT TO ALASKA BAR RULE 22(h)

Pursuant to Alaska Bar Rule 22(h), Vikram Chaobal, Respondent, and Louise Driscoll, Assistant Bar Counsel, stipulate as follows:

### JURISDICTION AND VENUE

1. The respondent, Vikram Chaobal, is a member of the Alaska Bar Association, admitted to practice law by the Supreme Court of Alaska. Chaobal practices law in the Third Judicial District, in Anchorage, Alaska, and is subject to the Alaska Rules of Professional Conduct (ARPCs) and to the Alaska Bar Rules, Part II (Rules of Disciplinary Enforcement), giving the Alaska Supreme Court and the Disciplinary Board of the Bar jurisdiction to hear this matter.

## BACKGROUND FACTS
### <u>ABA File No. 2017D182 (E.D. v. Chaobal)</u>

2.      Complainant E.D. hired Chaobal on July 29, 2016, to represent him on charges of drug conspiracy and money laundering conspiracy in United States District Court.  E.D. did not have a written fee agreement.  E.D alleged that family members and friends paid $37,000 to Chaobal for the representation.

3.      E.D. provided a log showing three court appearances in the early stages of the representation and five visits from Chaobal with E.D. in jail.  E.D. alleged that starting in April 2017, Chaobal stopped showing up for jail visits despite promises to do so.

4.      E.D. alleged that Chaobal talked about all the motions he had filed or would file, but nothing happened.  Entries on the court docket show that Chaobal requested and received continuances until the court denied the last motion for a continuance in September 2017.

5.      E.D. alleged that communication was very difficult.  Chaobal was difficult  to reach and he was non-responsive to both E.D. and family members.

6.      Chaobal responded to the grievance allegations, contending that he charged and received a flat fee of $26,000.

7.      Chaobal said he would procure phone records to show how often he spoke with co-defendant's attorney and the U.S. Attorney.  He never supplemented his response with the promised phone records.

8.      Chaobal contended that filing motions would negatively impact any plea negotiations with the U.S. Attorney's office.

9.      Chaobal stated that E.D. faced a 10-years-to-life sentence, but that the Assistant U.S. Attorney agreed to recommend the mandatory minimum.  Just prior

to the change of plea hearing to accept an offer with open sentencing, E.D. retained new counsel.

10. Chaobal offered to refund E.D. $10,000 of the paid fee in four payments of $2,500 over a period of six months, but E.D. filed a petition for fee arbitration.

11. Despite promising to supplement his grievance response, Chaobal never provided a fee agreement with E.D., a time accounting, or invoices.

### ABA File No. 2018D078 (Fee Arbitration Referral in E.D.)

12. E.D. filed a petition for fee arbitration. E.D. timely filed discovery requests for timekeeping records, a fee agreement, and expense receipts. Chaobal did not respond to the discovery requests.

13. At the April 23, 2018 hearing, Chaobal moved to supplement the record with a time accounting that he would generate and produce within two weeks.

14. The fee arbitration panel denied Chaobal's motion because he did not show good cause for failing to provide a time accounting or other documents earlier, stating that Chaobal had known that his fees were being challenged since the petition was filed in October 2017 and he did not produce exhibits ten days before the hearing as the pre-hearing order required.

15. At the hearing, E.D. alleged that a $37,000 fee was unreasonable and he requested a refund of fees, less the fee owed for legal services that were performed.

16. Chaobal testified he negotiated a flat fee of $30,000, but only received $26,000. Chaobal testified that he "burned up more than $30,000" on the case. Chaobal testified he reviewed a large volume of discovery and negotiated a mandatory minimum sentence plea agreement before E.D. retained new counsel.

17. Chaobal asked that E.D. pay him $5,000 in additional fees.

18.     The panel found that Chaobal reasonably could have spent 52 hours in court appearances, jail visits, and discovery review. The panel found that Chaobal's $185 hourly rate was reasonable for the representation. Multiplying the hours spent by Chaobal's hourly rate and adding costs, the panel held that Chaobal reasonably earned $11,620 in fees and costs. The panel ordered Chaobal to refund $14,380 to E.D.

19.     On May 23, 2018, the panel made a disciplinary referral to Bar Counsel because Chaobal failed to communicate the basis of his fee to E.D. in a written fee agreement, failed to deposit funds received for future fees and expenses into a client trust account, failed to maintain records or provide an accounting of client funds, and deposited unearned client funds into a personal account.

20.     Chaobal responded to the referral by expressing his intention to provide phone records, jail visit logs, receipts for copying discovery, and a time accounting. No records were provided.

21.     E.D. was paid $14,380 on October 17, 2018.

### ABA File No. 2017D196 (Court Referral)

22.     On December 26, 2017, the court of appeals dismissed an appeal in *R.J. v. State* for want of prosecution. Chaobal was the attorney of record for R.J.

23.     As R.J.'s attorney, Chaobal, on June 29, 2017, had filed an appellate docketing statement to appeal R.J.'s convictions of first degree vehicle theft and driving while his license was suspended or revoked.

24.     Chaobal did not submit a filing fee, statement of points on appeal, or designation of transcript. Instead, Chaobal filed motions to extend the time for filing these items. The court extended the deadline to July 31, 2017.

25.     On July 31, 2017, Chaobal moved to extend time. The court granted Chaobal until August 28, 2017 to file the appellate documents and fee.

26. The August 28, 2017, deadline passed with no filing. On September 5, 2017, the court directed Chaobal to show cause by September 22, 2017, why he should not be fined $500.

27. Chaobal responded to the September 5 order to show cause by asking for another extension of time of undefined length. Chaobal advised that he would not be handling the appeal, which he expected a public defender would do.

28. The court fined Chaobal $50 for his failure to timely contact the State's attorney about his extension request. Instead of granting the request for more time, the court ordered Chaobal to file a case status report on October 17, 2017. Noting ambiguity about the appointment of the public defender in Chaobal's pleading, the court cautioned Chaobal that he was still counsel of record and directed Chaobal to look at Alaska Rule of Professional Conduct 1.16(d).

29. Chaobal did not file the court-ordered status report on October 17, 2017.

30. In response to e-mail inquiries from the appellate court clerk's office, Chaobal said he would respond by October 26, 2017.

31. On October 26, 2017, Chaobal filed a statement that he needed more time because he planned to visit Goose Creek Correctional Center "over the weekend." Chaobal promised to file a supplemental response on Monday, October 30, 2017.

32. Chaobal did not file a supplemental response on Monday, October 30, 2017.

33. On October 31, 2017, Chaobal e-mailed the office of the appellate clerk to state, "I am filing a motion to withdraw and [for] appointment of the PD. I'm in trial today; the motions will be filed tomorrow."

34. Chaobal did not file anything on November 1 or 2, 2017.

35. On November 3, 2017, the court of appeals issued an order, copying Bar Counsel. The November 3 order directed Chaobal to appear personally before the court on November 8 to explain his handling of the case, particularly his failure to perfect his client's appeal or to obtain court-appointed counsel for R.J. The court also directed Chaobal to explain why he should not be held in contempt.

36. On November 7, 2017, Chaobal filed a report, explaining the work he performed and the difficulties he encountered — mainly financial. Chaobal had filed a designation of transcript and promised to file a statement of points on appeal after reading the transcript. Chaobal did not pay the filing fee or move to waive or reduce the fee.

37. In a November 8, 2017 order, the court of appeals stated that Chaobal did not need to appear in person before the court, but that the court would monitor that the appeal was perfected timely. The court set a new deadline of December 4, 2017.

38. Chaobal did not file overdue appellate documents to meet the December 4, 2017 deadline. On December 21, 2017, Chaobal filed a status report describing unsuccessful attempts he made to reach R.J. Earlier Chaobal had secured R.J.'s release on bail, and R.J. promptly left the area and stopped communicating with Chaobal. Chaobal explained that R.J.'s participation was necessary to formulate points on appeal and to strategize on the case. He added that financial costs of the litigation were heavy and he was unable to file the transcript or pay the filing fee at that time.

39. On December 26, 2017, the court dismissed the appeal for want of prosecution.

**ABA File No. 2018D008 (C.M. v. Chaobal) Consolidated with
ABA File No. 2018D217 (C.M. Fee Arbitration Referral)**

40. On January 11, 2018, complainant C.M. filed a grievance, alleging

he hired Chaobal to represent him in a criminal case. C.M. wanted Chaobal to provide "accurate timely deliverables in filings" and to be "honest, courteous and not to damage the chances for a quick and accurate resolution to this matter."

41. Despite his expectations, C.M. alleged that Chaobal was late or didn't show up for scheduled appointments. Chaobal would ask C.M. for money at odd times, including late at night or on weekends, and then provide no receipts when money was advanced. C.M. alleged Chaobal did not file motions as planned, and that Chaobal was discourteous.

42. C.M. also filed a petition for fee arbitration. A hearing was held on May 22, 2018.

43. During his testimony, Chaobal offered to refund one-half of C.M.'s fees. Although Chaobal claimed that C.M. owed him nearly $37,000, the parties at the hearing agreed the fees totaled $8,500.

44. The parties agreed to a settlement which was thoroughly discussed in front of the panel, reduced to writing, and put on the record.

45. The settlement terms required Chaobal to pay $4,250 to C.M. in two installments. Chaobal agreed to pay $2,000 by October 1, 2018 and $2,250 by November 1, 2018.

46. On October 17, 2018, C.M. reported that Chaobal had not made the October 1 payment of $2,000.

47. The panel asked Chaobal to respond by October 24, 2018 to the report that he had failed to make the payment to C.M. Chaobal did not respond to the panel.

48. In its disciplinary referral, the panel reported on Chaobal's poor billing practices and lack of appropriate law office procedures. Because Chaobal sent no bills, neither C.M. nor the panel had an explanation for fees that Chaobal alleged were

owed him. The panel found that Chaobal's lack of preparedness for the fee arbitration hearing (such as failing to bring a copy of the C.M. fee agreement or other documents to the hearing) corroborated what C.M. said about Chaobal being unprepared.

49. On September 18, 2020, Aditya Chaobal delivered a cashier's check in the amount of $3,500 payable to C.M. C.M. notified the Bar that he considered the $4,500 fee arbitration award to be satisfied because Chaobal had earlier given C.M. a piece of art and rendered some smaller services.

### ABA File No. 2018D109 (B.B. v. Chaobal)

50. Complainant B.B. hired Chaobal to appeal a DUI conviction. B.B. wanted a bail hearing as soon as possible.

51. Chaobal failed to bring a fee agreement with him when he first visited B.B. in jail, but they verbally agreed to a $7,500 fee, with $5,000 to be paid at the start of the representation and $2,500 to be paid after all the court filings were done.

52. Despite multiple requests, Chaobal never provided a fee agreement.

53. B.B. was dissatisfied with Chaobal's representation, particularly with delays related to a bail hearing. B.B. tried unsuccessfully to fire Chaobal by phone and text sent by his family, but he was unable to reach Chaobal.

54. B.B. sent Chaobal letters on March 27, 2018 and April 18, 2018, asking for a refund and expressing dissatisfaction with the representation. Chaobal never responded and B.B. hired new counsel.

55. Chaobal has not refunded any portion of the fee, stating that it was earned during the course of his representation. B.B. has not filed a petition for fee arbitration to seek a refund of unearned fees.

## ABA File No. 2018D116 (P.B. Fee Arbitration Referral)

56.     Petitioner P.B. filed a petition for fee arbitration against Chaobal, claiming he paid in excess of a flat fee agreement, without signing a new fee agreement. P.B. requested Chaobal to refund a portion of fees that P.B. had advanced.

57.     At the May 14, 2018, fee arbitration hearing, P.B. testified that he hired Chaobal in July 2013 to litigate a wrongful termination claim against Alaska Airlines.

58.     Chaobal's written engagement letter stated:

> I have agreed to represent you through all phases of this matter.  In exchange, you have agreed to pay me the initial sum of $3,500.00 for pre-trial work.  In the event that this case becomes overly complicated or drawn out, it is our mutual expectation that a new fee agreement will be negotiated.

No hourly rate was set out in the engagement letter.

59.     Alaska Airlines won a dismissal of the complaint by motion. Chaobal filed an appeal of the dismissal to the Alaska Supreme Court and received a partial reversal of the dismissal and a remand.  Following the remand, P.B. hired another attorney who proceeded with the litigation.

60.     P.B. testified Chaobal did not file any substantive motions, serve discovery requests, or take depositions.

61.     Despite repeated requests for a bill, P.B. said Chaobal never provided one.  Instead Chaobal would meet with P.B. to describe work to be performed and then ask for a sum of money which P.B. would pay.  Sometimes Chaobal provided receipts for money P.B. advanced Chaobal. P.B. brought receipts totaling payments of $15,600 to the fee arbitration hearing.

62. At the hearing, Chaobal produced a single document labeled "invoice" that listed a $285 hourly rate and total billable hours of 155.40 for a total fee of $29,039 even though the fee agreement stated Chaobal would charge a $3,500 flat fee for pre-trial work.

63. Chaobal agreed that he received $15,250 from P.B.

64. The fee arbitration committee found the time assigned to tasks on Chaobal's invoice was unreasonable and that the invoice contradicted the written fee agreement executed by the parties.

65. The committee honored P.B.'s request for a 50% refund of fees and awarded him a refund in the amount of $7,800.

66. On September 28, 2018, Chaobal paid P.B. $7,800 by cashier's check.

**ABA File No. 2018D117 (J.R. v. Chaobal)**

67. In August 2017, J.R. hired Chaobal to replace his court-appointed attorney in a federal criminal matter on drug-related charges after J.R.'s court-appointed attorney had negotiated a plea agreement.

68. J.R.'s sister paid Chaobal $5,000 for the representation.

69. J.R. alleged that after Chaobal received the money, he merely crossed out former counsel's name on the plea agreement, wrote his own and then stopped communicating with J.R. and his sister, leaving J.R. stranded.

70. Chaobal responded that his communication with J.R. "was regular and consistent with that of other Federal defense attorneys and their incarcerated clients."

71. He responded that while he negotiated a plea on two separate occasions, he made a strategic decision not to file motions.

72. J.R. alleged he tried unsuccessfully to get Chaobal to correct errors in the pre-sentencing report which enhanced the sentencing range and would result in a longer sentence.

**ABA File No. 2018D231 (J.R. Fee Arbitration Referral)**

73. J.R. filed a petition for fee arbitration because he considered the $5,000 fee unreasonable.

74. The November 15, 2018, hearing was before an experienced criminal defense attorney.

75. Chaobal did not respond to the petition allegations under Alaska Bar Rule 40(d). Chaobal did not file any exhibits pursuant to the Pre-Hearing Order.

76. At the hearing, J.R. testified that he retained Chaobal to give a second opinion regarding a settlement offer from the prosecution. Chaobal contended that J.R. retained him to "fight the case." Each agreed that J.R. paid Chaobal a flat fee of $5,000.

77. Chaobal did not have a written fee agreement with J.R. and he did not keep billing records. He testified his billing rate was $285 per hour.

78. Chaobal testified he spent twenty to thirty hours reviewing discovery and an additional twenty hours conducting research on issues. He testified that he talked to J.R., J.R.'s sister, and the Assistant U.S. Attorney prosecuting the case. Chaobal said he attended two hearings: a change of plea hearing that was continued and a hearing during which Chaobal was permitted to withdraw as counsel.

79. Due to the absence of time records, Chaobal said he was "guessing" as to the actual amount of time he spent on the case.

80. J.R. agreed that he met with Chaobal about six times in jail.

81. Even though Chaobal testified that the $5,000 flat fee was to "fight the case," the arbitrator found "such a minimal retainer would not be sufficient for full

representation on a federal drug case." The arbitrator concluded that it was "far more likely the initial $5,000 flat fee was for Respondent to provide a second opinion on the proposed plea offer."

82. The arbitrator found the only clear and convincing evidence presented at the hearing showed that Chaobal visited J.R. in jail. Chaobal provided no evidence to support with clear and convincing evidence the time he spent reviewing discovery, conducting research, and communicating with his client or the client's sister. No testimony was presented about the duration of the change of plea hearing that Chaobal attended and which was continued. No testimony was presented about the duration of the hearing at which Chaobal was allowed to withdraw as counsel.

83. The arbitrator concluded that Chaobal established that he earned $427.50 of his fee for the jail visits. He ordered the balance of the retainer, $4,572.50, to be refunded to J.R.

84. The arbitrator referred the matter to Bar Counsel for appropriate disciplinary proceedings, noting that Chaobal failed to carry malpractice insurance and failed to notify J.R., in writing, of the absence of malpractice insurance.

85. On April 25, 2019, $4,572 was paid to J.R.

### ABA File No. 2018D216 (Court Referral)

86. On October 10, 2018, the court of appeals served a copy of an order issued in *B.B. v. State* on discipline counsel of the Alaska Bar Association.

87. The court's order addressed pleadings that Chaobal and his successor counsel had each filed to explain why no opening brief had been filed in the B.B. appeal of a felony DUI conviction.

88. The court wrote that affidavits submitted by Chaobal and successor counsel were "irreconcilably in conflict on the question of whether Chaobal warned

[successor counsel] of the briefing deadline before it expired. In other words, it appears that one of these attorneys has made false statements to this Court under oath."

89. Upon receipt of the court's order, Bar Counsel offered Chaobal and successor counsel opportunities to provide a voluntary response to the misconduct allegations.

90. Successor counsel promptly responded to Bar Counsel and denied that Chaobal advised him of the deadline after successor counsel entered his appearance. Successor counsel acknowledged that when the file was not turned over promptly, it was his responsibility to learn of approaching deadlines rather than rely on prior counsel to provide him that information.

91. Chaobal did not file a voluntary response. After an investigation was opened, he filed his mandatory response several months late.

92. The court file indicated that in February 2018, Chaobal requested an extension of time to file B.B.'s opening brief. Chaobal sought a second extension of time, making the opening brief due on June 25, 2018.

93. Successor counsel entered his appearance for B.B. in early June 2018, but he did not file a substitution of counsel. Despite this technical deficiency, the clerk's office allowed Chaobal to withdraw and successor counsel assumed sole responsibility for filing B.B.'s opening brief.

94. On July 5, 2018, the clerk's office issued a notice that B.B.'s opening brief was overdue. By mistake, the notice was sent to Chaobal rather than successor counsel. On July 26, the clerk's office learned of the mistake and sent an amended notice of overdue brief to successor counsel.

95. Successor counsel asserted he never received the amended notice of July 26. Instead, he received a copy of the earlier July 5 notice that was addressed to Chaobal, plus a copy of the order retracting the earlier notice because Chaobal was no

longer the attorney of record. The court accepted that successor counsel never received the overdue brief notice dated July 26.

96. On July 30, 2018, successor counsel moved to withdraw as counsel and acknowledged that he missed a filing deadline and never filed a motion to extend the briefing deadline.

97. On August 30, 2018, the court ordered successor counsel to show cause under oath by September 11, 2018, why the court should not fine him $50 for failing to honor the June 25th briefing deadline.

98. Successor counsel filed an affidavit on August 31, 2018. Successor counsel's affidavit stated that he asked Chaobal several times for the file. Chaobal did not turn over the file until July 3, 2018, after the June 25, 2018 deadline to file the opening brief. Successor counsel stated he incorrectly assumed that Chaobal would promptly turn over the file and alert him to an approaching deadline to file the opening appeal brief.

99. On September 5, 2018, the court issued an order granting Chaobal an opportunity to respond to the suggestion that he violated ARPC 1.16(d), and ordered Chaobal to file an affidavit describing his knowledge of the circumstances of successor counsel's entry of appearance and whether any discussion of pending deadlines occurred.

100. Chaobal's affidavit stated that when he told successor counsel that Chaobal had previously moved for an extension of time to file the brief, successor counsel responded that he understood the appeal process and was competent to handle the matter.

101. Chaobal stated he was "very concerned about filing deadlines, and routinely inquired of [successor counsel] how he was going to address the Opening Brief deadline." In addition to earlier phone calls with successor counsel, on July 16, 2018, Chaobal said he prodded successor counsel by sending an e-mail with the message,

"Status with the COA?" He explained that the e-mail was a "follow-up to a conversation we had several weeks prior when I advised him that the brief deadlines were imminent — he exerted a great deal of confidence and rather rudely told me he was competent to handle this matter."

102.    E-mail correspondence shows that successor counsel requested the file on more than one occasion, and that Chaobal did not turn over the file until early July, after the deadline for filing the brief or requesting an extension of time had passed. Chaobal did not provide deadlines in writing or warn successor counsel in writing of an approaching deadline to file the opening brief.

103.    In conversations with Bar Counsel, Chaobal explained that initial efforts to advise successor counsel that a deadline was approaching had been brushed off by successor counsel's brusque announcement that he was experienced in handling appeals. Chaobal agreed that he was unreasonably provoked by successor counsel because successor counsel had represented a former client of Chaobal's in a fee arbitration and appeared to be impugning Chaobal's reputation with defendants housed at the correctional center. Chaobal said that his normal course of conduct would be to alert successor counsel of approaching deadlines, and he agreed that his response to the perceived arrogance of successor counsel did not excuse his failure to protect his client by not turning the file over promptly.

104.    Chaobal acknowledged that he lacked reflection when preparing his affidavit to the court of appeals and while he did not intentionally misrepresent what happened, he failed to consider what happened in this particular matter versus what he would ordinarily do in such a situation. Chaobal had not made a copy of the file before handing it over to successor counsel so he had no documents to review to refresh his recollection. Such a review would show that no evidence documented that Chaobal

inquired about the status of the court of appeals matter with successor counsel until mid-July, after the June filing deadline had passed.

105. Chaobal believed that successor counsel was unnecessarily interfering with Chaobal's client relationships and spreading unflattering opinions about Chaobal to clients. He acknowledged that he thoughtlessly responded to successor counsel's affidavit by enhancing the minimal steps he took to alert successor counsel to the approaching deadline. He agreed that he conflated several conversations about former clients now represented by successor counsel during this time period to state that he timely warned successor counsel about the pleading deadline when, in fact, successor counsel cut off that conversation and Chaobal did not pursue it. For purposes of this stipulation, the parties agree that Chaobal did not intend to mislead the court of appeals, but that he knowingly seized an opportunity to tarnish successor counsel's reputation as a successful and experienced appellate counsel without careful regard of the import of his actions. The parties also agree that successor counsel, an experienced attorney, should have consulted the appellate case management website to learn the filing deadlines and the necessity to request an extension of the deadline for the opening brief.

### ABA File No. 2019D056 (H.H. v. Chaobal)

106. On December 28, 2016, complainant H.H. filed a civil suit *pro se* in United States District Court against the Alaska Department of Corrections, the Anchorage Police Department, Police Chief Mark Mew, and Magistrate Catherine Rogers.

107. In a February 27, 2017 screening order, the court ordered H.H. to file a first amended complaint or notice of dismissal by April 17, 2017.

108. Soon after, H.H. hired Chaobal to represent her in her federal lawsuit for a fixed fee of $5,000 plus 25% of any funds awarded to H.H. Chaobal entered his appearance on March 21, 2017.

109. On April 17, 2017, Chaobal filed an amended complaint against the Municipality of Anchorage, the Anchorage Police Department, L.S., and C.V.

110. On June 15, 2017, defendants filed a motion and memorandum in support to dismiss the complaint. Chaobal filed an opposition.

111. Rather than dismissing the complaint, the court, on October 20, 2017, ordered that a second amended complaint be filed no later than November 27, 2017.

112. Chaobal filed two motions to extend time to file the second amended complaint, extending plaintiff's deadline to file her second amended complaint to December 15, 2017.

113. On January 11, 2018, the court dismissed the case without prejudice because no second amended complaint was filed.

114. In her Bar grievance, H.H. alleged that Chaobal failed to research issues pertaining to immunity, failed to obtain necessary documents through discovery, and failed to show up for scheduled meetings. She alleged that Chaobal asked for additional monies on short notice, including on December 25, 2017 (Christmas), when Chaobal telephoned her to ask her to pay more money directly into his bank account.

115. H.H. filed a fee arbitration petition to seek a refund of the fee she paid. The parties to this stipulation agree that evidence supports that Chaobal earned the $5,000 H.H. initially paid. Chaobal attempted to resolve the dispute amicably but H.H. wanted to proceed to a hearing.

116. The parties have been unable to participate in a fee arbitration hearing due to the COVID 19 pandemic.

117. On October 3, 2019, Chaobal pled no contest to a misdemeanor, Operating Under the Influence. After notification to the Alaska Supreme Court under Alaska Bar Rule 26(i), Chaobal was referred to the Lawyers' Assistance Committee.

118. On September 30, 2020, LAC members reported that Chaobal met with the committee several times, cooperated with the LAC, and complied with its requests. The committee had no further recommendations and the file was closed.

## DISCIPLINARY VIOLATIONS

### *Rule 1.3*
### *Diligence*

119. Alaska Rule of Professional Conduct 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client."

120. As set out above, Chaobal violated Rule 1.3 when he failed to perfect an appeal in the *R.J.* matter, failed to act promptly to request a bail hearing when representing B.B., and failed to file a second amended complaint in the *H.H.* matter.

### *Rule 1.4(a)*
### *Communication*

121. Alaska Rule of Professional Conduct 1.4(a) requires a lawyer to keep a client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information.

122. As set out above, Chaobal violated Rule 1.4(a) when he failed to respond to letters, phone calls and texts from his clients including E.D., B.B., J.R.,and H.H.

### *Rule 1.4(c)*
### *Communication*

123. Alaska Rule of Professional Conduct 1.4(c) states:

(c) A lawyer shall inform an existing client in writing if the lawyer does not have malpractice insurance of at least $100,000 per claim and $300,000 annual aggregate and shall inform the client in writing at any time the lawyer's malpractice insurance drops below these amounts or the lawyer's malpractice insurance is terminated. A lawyer shall maintain a record of these disclosures for six years from the termination of the client's representation.

124. During all relevant times, Chaobal did not have malpractice insurance and he violated Rule 1.4(c) by not disclosing that lack of malpractice insurance in writing to clients such as E.D., C.M., B.B., and J.R. Chaobal informed P.B. in his engagement letter of his lack of malpractice insurance.

### Rule 1.5(a)
### Fees

125. Alaska Rule of Professional Conduct 1.5(a) requires a lawyer to charge fees that are reasonable under the circumstances.

126. As set out above, Chaobal violated Rule 1.5(a) by charging unreasonable fees for the services that he performed for clients including E.D., P.B., C.M., B.B., and J.R.

### Rule 1.5(b)
### Fees

127. Alaska Rule of Professional Conduct 1.5(b) requires a written fee agreement if a fee will exceed $1,000.

128. As set out above, Chaobal violated Rule 1.5(b) by failing to have a written fee agreement for a fee in excess of $1,000 for clients including E.D., C.M., B.B., and J.R.

### Rule 1.15(d)
### Safekeeping Property

129. Alaska Rule of Professional Conduct 1.15(d) requires a lawyer to

promptly deliver to the client or third person any funds that the client or third person is entitled to receive and to promptly render a full accounting regarding the funds or property.

130. As set out above, Chaobal violated Rule 1.15(d) by his failure to promptly deliver funds and promptly render a full accounting to clients including E.D., P.B., B.B., C.M., J.R., and H.H.

### Rule 1.16(d)
### Declining or Terminating Representation

131. Upon termination of the representation, Alaska Rule of Professional Conduct 1.16(d) requires a lawyer "to take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred."

132. As set out above, Chaobal violated Rule 1.16(d) when, upon termination of the representation, he failed to take the necessary steps such as by promptly refunding fees, filing necessary pleadings, and promptly turning over the client files in matters involving E.D., R.J., B.B., and H.H.

### Rule 3.3
### Candor toward the Tribunal

133. Chaobal agrees that his efforts to alert successor counsel of approaching deadlines in the *B.B.* matter were not as timely and frequent as he stated in his affidavit. When he took umbrage at successor counsel's response to his initial effort to alert counsel to the deadline, he abandoned further timely efforts to monitor the matter. This reaction was exacerbated by Chaobal's belief that successor counsel was assisting in the distribution of confidential fee arbitration decisions at the Anchorage jail in an

effort to interfere with Chaobal's client relationships. Chaobal agreed he violated Rule 3.3(a) by stating that he followed his usual practice of providing several verbal warnings about a deadline without knowingly confirming that he did in this singular situation.

### Rule 8.1(b)
### Bar Admission and Disciplinary Matters

134. Alaska Rule of Professional Conduct 8.1(b) states that in connection with a disciplinary matter, a lawyer shall not "knowingly fail to respond to a lawful demand for information" from disciplinary authority.

135. The parties agree that a hearing committee could find that Chaobal violated ARPC 8.1(b) by failing to respond timely in writing to Bar Counsel's requests for information in matters involving P.B. and the B.B. court referral, and by responding to many grievances with few facts and promises that remained unfulfilled to supplement his responses with information. For purposes of this stipulation, the parties agree that Chaobal's ability to respond was hampered by being evicted from his condominium and office in a short time frame which impeded his ability to maintain files carefully and made it difficult to access information that he contended would be responsive to Bar Counsel's requests.

### Ethics Opinions Violations

136. Under Ethics Opinion No. 2012-2 any "flat fee" or fixed fee" arrangement:

> Should be placed into a client trust account until earned, unless after consultation, the lawyer and client agree in writing: (1) that the funds will become the property of the lawyer when paid; (2) that they will not be held in a client trust account; (3) that the lawyer and client acknowledge the special purpose of the retainer arrangement; (4) that the client has been advised of the potential consequences of the retainer agreement; and (5) that the fees become earned for purposes of a potential refund on a specified and reasonable basis that

will not result in an unreasonably high fee for legal services actually rendered.

137. As set out above, Chaobal failed to deposit advanced fees into a client trust account and violated Ethics Opinion No. 2012-2 when he failed to get his clients' consent in writing to the conditions that would allow Chaobal not to hold fees in a client trust account in matters involving E.D., P.B., C.M., J.R., and B.B.

138. Alaska Ethics Opinion No. 2011-4 sets out the duties of an attorney in a criminal appeal when the client, who has directed that an appeal be filed, cannot be contacted. The ethics opinion states that once the notice of appeal and points on appeal are filed, and reasonable efforts to locate and contact the client have proven futile, the attorney ethically may file the appellate briefs or file a motion to withdraw. Chaobal did neither.

139. By failing to file the notice of appeal and points on appeal in the *R.J.* matter, and by not filing the appellate briefs or moving to withdraw, Chaobal violated Ethics Opinion 2011-4.

## SANCTION ANALYSIS

140. The American Bar Association Standards for Imposing Lawyer Sanctions (1986) (ABA Standards), adopted in *In re Buckalew*, 731 P.2d 48 (Alaska 1986), and reported decisions of the Alaska Supreme Court govern the sanctions for Chaobal's misconduct.

141. Under ABA Standard 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

142.  These factors are addressed in a three part methodology: 1) determine the first three factors; 2) determine the recommended sanction; and 3) determine whether aggravating or mitigating circumstances exist. *In Re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

## Part 1: Duty Violated; Lawyer's Mental State; Actual or Potential Injury

### *A. Duty Violated*

143.  Chaobal breached duties he owed to his clients: he failed to act diligently, failed to keep clients informed, failed to prepare written fee agreements, failed to disclose his lack of malpractice insurance, failed to account for client funds, and failed to deliver funds promptly upon client request. *See* ABA Standards §§ 4.4 and 4.1. Chaobal breached duties owed to the profession when he failed to withdraw properly from client representation, failed to turn over client files promptly, failed to pay fee arbitration awards promptly, and failed to provide mandatory responses to Bar grievances. *See* ABA Standards § 7.0.  He violated duties owed to the legal system when he failed to follow rules of substance and procedure governing fee arbitrations and when he made false statements of material fact to the court. *See* ABA Standards §§ 6.1 and 6.2.

### *B. Mental State*

144.  Under the ABA standards:

'Intent' is the conscious objective or purpose to accomplish a particular result.

'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

145.    Under the ABA Standards, the most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result.

146.    The parties agree that a hearing committee could find that Chaobal acted knowingly when he failed to return client calls, failed to have written fee agreements, failed to disclose the lack of malpractice insurance, failed to account and turn over funds promptly, and failed to turn over client files promptly. He acted knowingly when he failed to comply with fee arbitration procedures. He acted knowingly when he failed to account and pay client funds promptly. He acted knowingly when he submitted an affidavit to the court containing an inaccurate recounting of events.

## C. Actual or Potential Injury

147.    Clients experienced stress and anxiety by their inability to speak with Chaobal, particularly when they saw little progress being made on their cases. Clients were frustrated by their inability to calculate what was owed in fees or why more was owed when a "flat fee" had been charged. Clients were concerned about the odd times of night and day that Chaobal would request more money. In instances when clients fired Chaobal, they had to pursue arbitration in order to get funds returned. In addition to client harm, the profession is harmed when an attorney fails to follow standards that govern professional conduct such as withdrawal from a representation and participation in the discipline and fee arbitration systems. The legal system is harmed when an attorney violates a fundamental duty as an officer of the court by providing inaccurate testimony.

**Part 2: Recommended Sanction under ABA Standards**

148. ABA Standards § 4.1 discusses appropriate sanctions in cases involving the failure to preserve client property (Rule 1.15). ABA Standards § 4.12 recommends suspension when "a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." Chaobal knowingly failed to establish proper accounting procedures, failed to maintain a client trust account, and failed to turn over client funds promptly.

149. ABA Standards § 4.4 addresses sanctions where a lawyer fails to act with reasonable diligence and promptness in representing a client, including cases in which lawyers do not communicate with their clients.

150. Chaobal failed to meet appellate deadlines, failed to move cases along promptly, failed to respond to client calls, and failed to tell clients that he lacked malpractice insurance.

151. ABA Standards § 4.42 recommends suspension when a lawyer knows he is not performing the services his clients requested or engages in a pattern of neglect, including the neglect of meaningful communication.

152. ABA Standards § 7.0 addresses sanctions for violations of duties owed to the profession. Section 7.2 provides that a suspension is generally appropriate "when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

153. ABA Standards § 7.3 provides that a "reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." The parties agree that Chaobal's failure to withdraw properly from representation of R.J. and H.H. warrants a reprimand.

154. Lack of candor to the court violates a duty owed to the legal system. Under ABA Standards § 6.12 suspension is "generally appropriate when a lawyer knows that false statements or documents are being submitted to the court," takes no remedial action, and causes injury or potential injury to a party or causes an adverse or potentially adverse effect on the legal proceeding.

155. By filing a misleading affidavit in court, Chaobal risked deceiving the court, a serious breach of duty to the legal system. The parties to this stipulation agree that although Chaobal's conduct did not cause a significant adverse effect on the legal proceeding, a suspension is appropriate.

## DISCIPLINARY SANCTION

156. Based on a review of the ABA Standards, the misconduct, without application of aggravating and mitigating factors, supports a serious suspension from the practice of law.

## Part 3: Aggravating and Mitigating Factors

157. ABA Standards § 9.0 sets out factors that may be considered in aggravation and mitigation.

158. The following aggravating factors may be considered in deciding what sanction to impose:

Dishonest or selfish motive (9.22(a));

A pattern of misconduct (9.22(c));

Multiple offenses (9.22(d));

Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency (9.22(e)); and

Substantial experience in the practice of law (9.22(i)) (Chaobal was admitted to practice in 2003).

159. The following mitigating factors may be considered in deciding what sanction to impose.

Absence of a prior disciplinary record (9.32(a));

Personal or emotional problems (9.32(c)) (Chaobal's longtime girlfriend was killed in an accident in September 2016, his condo was foreclosed on and he had to leave an office. Chaobal acknowledged that he failed to address these issues in a healthy way); and

Remorse 9.32(l)) (Chaobal maintained a successful practice for several years. He is extremely remorseful that events in his personal life and his poor choices in response led to compounding problems with his law office management and resulting harm to his clients.)

160. The parties agree that each disciplinary case is decided upon its own particular set of facts, including the proper balancing of aggravating and mitigating circumstances. Here the mitigating factors help to offset several aggravating factors, but not sufficiently to merit reduction of a presumptive sanction of suspension.

## ALASKA CASES

161. After considering the ABA Standards, sanctions are evaluated in light of other cases and authorities. Chaobal and Bar Counsel have considered the following reported and unreported cases in which professional discipline was imposed by the Alaska Supreme Court for violations such as those at issue here. *In re Walton*, 676 P.2d 1078 (Alaska 1983) (18-month suspension for submitting false documents likely to be relied on by court); *In re Cyrus*, Supreme Court No. S-12247 Order 4/3/06) (six-month suspension and public censure for neglect and filing a series of inconsistent affidavits, making an objectively misleading statement in a notarized pleading to the court); *In re Shea*, 251 P.3d 357 (Alaska 2011) (two-year-and-one-month suspension for conflict of interest, false statements of fact in court pleadings, and unprofessional

pleadings); *In re Cyrus*, 241 P.3d 890 (Alaska 2010) (five-year suspension with three years to serve for failure to be competent, act with reasonable diligence and promptness, communicate, make reasonable efforts to expedite litigation, and respond to the Bar); *In re Brion,* 212 P.3d 748 (Alaska 2009) (three-year suspension with one year to serve for neglect, failure to communicate, failure to communicate the basis of his fees and to provide accounts of hours billed, general failure to account properly for client funds, and failure to respond to the Bar Association regarding client grievances (6 clients)). The court later disbarred Brion for continuing lack of diligence and failure to safeguard client money. *In re Brion*, Supreme Court No. S-13722, Amended Order, 03/24/10; *see also In re Grashin,* Supreme Court No. S-10817 (Order 01/01/2003) (nine-month suspension for neglect, conflict of interest, excessive fee, failure to deliver client property, false and misleading statements (1 client)); *In re Hahn,* Supreme Court No. S-12874 (Order 12/14/07) (two-year-and-one-day suspension for neglect, failure to communicate and respond to Bar (3 clients)); *In re Pallister,* Supreme Court No. S-14489 (Order 11/10/2011) (two-year-and-one-day suspension for failure to act with reasonable diligence and promptness in representing client, failure to make reasonable efforts to expedite litigation, and failure to respond to Bar investigation and petition for formal hearing (one client)); *In re Rosenbaum,* Supreme Court No. S-15604 (Order 7/9/2015) (42-month suspension for failure to keep clients informed, to disclose the absence of malpractice insurance, to refund unreasonable fees, to account for fees charged, and to respond to disciplinary counsel and petition (two clients)); *In re Albertsen*, Supreme Court No. S-17026 (Order 5/11/2018) (two-year-and-one-day suspension for neglect and failure to communicate, to have a written fee agreement, to render a full accounting, to turn over materials promptly, and to respond to the Bar (two clients)).

## STIPULATED DISCIPLINE

162.    Subject to approval by the Disciplinary Board of the Bar and by the Alaska Supreme Court, under Bar Rule 16(a)(2), Chaobal and Bar Counsel agree that Chaobal will accept: a 30-month suspension, with two years and a day to be served, with the remainder of the 30-month suspension stayed with the following conditions:

(a)    During the stayed portion of the 30-month suspension, Chaobal, at his expense, will work under the supervision of an attorney. The supervising attorney will be on active status with the Alaska Bar Association and mutually acceptable to Bar Counsel and Chaobal. The supervising attorney will meet at least monthly with Chaobal to discuss matters such as case management, compliance with court deadlines, and communication with clients. The supervising attorney will report telephonically to Bar Counsel monthly.

(b)    Chaobal should be required to pay a costs and fees assessment according to the schedule set out in Alaska Bar Rule 16(c)(3).

(c)    Chaobal must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and all clients for any fee arbitration awards that remain unpaid or that are ordered to be paid prior to seeking reinstatement.

(d)    Prior to his seeking reinstatement to the practice of law in Alaska, Chaobal will certify to Bar Counsel that he has earned at least nine credit hours of continuing legal education in the area of ethics, law office management, and management of law office accounts.

(e)    Chaobal will be required to meet with the Lawyers' Assistance Committee no more than 60 days before filing his petition for reinstatement and provide an LAC report that it approves his plan to seek reinstatement.

163. Chaobal, upon seeking reinstatement, will follow reinstatement procedures outlined in Alaska Bar Rule 29(c)(1)-(4).

DATED this 21st day of June, 2021, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION


/s/
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152


DATED this 21st day of June, 2021, at Anchorage, Alaska.


/s/
Vikram Chaobal
Respondent
Bar Member No. 0305011


## CONSENT OF RESPONDENT AND
## DECLARATION REGARDING NOTARIZATION

**Consent of Respondent:**  Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that Respondent admits to the allegations set forth above.

**Declaration Regarding Notary:**  Unsworn declaration as provided by AS 09.63.020:  I do not have available a notary public.  Therefore, I invoke the option provided in AS 09.63.020, *Certification of Documents*, and I submit this statement under oath and without notarization:

I do swear and certify under penalty of perjury that the factual allegations made in this document are true and correct and that my statements made herein are true and correct. I make this declaration pursuant to AS 09.63.020(a).

DATED this 21st day of June, 2021, at Anchorage, Alaska.


_____ /s/ _____
Vikram Chaobal
Respondent
Bar Member No. 0305011